**SANDERS LAW GROUP**
Craig B. Sanders (SBN: 284397)
333 Earle Ovington Blvd., Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
Our File No.: 145210
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Dean Moses,<br><br>Plaintiff,<br><br>v.<br><br>The Young Turks, Inc.,<br><br>Defendant. | Case No:<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Dean Moses ("*Plaintiff*"), by and through his undersigned counsel, for his Complaint against defendant The Young Turks, Inc. ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Plaintiff owns the copyrights in two video recordings of U.S. Immigration and Customs Enforcement ("*ICE*") agents inside John F. Kennedy International Airport ("*JFK*") on March 23, 2026, the first day ICE agents were deployed to the nation's airports (the "*First Video*" and the "*Second Video*," and together, the "*Videos*").

3. Defendant owns and operates TYT, a digital news network that publishes and monetizes video programming through its YouTube channels and other platforms, including its "TYT Sports" YouTube channel.

4. The day after Plaintiff published the Videos, Defendant, without license or authorization, copied both Videos, superimposed its own "TYT" logo on them, and published them on its TYT Sports YouTube channel.

## PARTIES

5. Plaintiff is an individual who is a citizen of the State of New York and resides in New York County, New York.

6. Defendant is a Delaware corporation with a principal place of business at 6230 Wilshire Boulevard, Suite 140, Los Angeles, California 90048, in Los Angeles County.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the federal copyright infringement claim pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

8. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in California and, upon information and belief, the acts of infringement alleged herein were directed and carried out from California.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant resides and may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claim occurred in this District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff and the Videos

10. Plaintiff is a New York-based photojournalist and photographer. For years, Plaintiff has covered breaking news, crime, government, politics, protests,



SLG SANDERS · LAW GROUP ·

emergencies, and other newsworthy events.

11. Plaintiff is the police bureau chief at amNewYork, a New York City daily news publication owned and operated by Schneps Media LLC ("Schneps Media").

12. Plaintiff's work has been widely recognized. In March 2026, Plaintiff received ten awards in the New York Press Photographers Association's 91st "Year in Pictures 2025" competition, including two first-place awards, many of them for his coverage of immigration enforcement at 26 Federal Plaza in Lower Manhattan. In 2022, the New York Press Association recognized Plaintiff as its photographer of the year.

13. Plaintiff's original photographs and videos are created through the exercise of professional judgment, skill, timing, composition, and technical expertise, and are licensed to media organizations and publishers for use in news reporting and related editorial content. The licensing of his copyrighted works is an important component of Plaintiff's professional livelihood.

14. Schneps Media is a New York-based media and publishing company that owns and operates a network of print and digital news publications, including amNewYork, Brooklyn Paper, QNS, and Bronx Times. Through its publications, Schneps Media creates, publishes, licenses, and distributes original journalistic content, including photographs and video covering news, politics, business, sports, entertainment, and matters of public interest. The licensing and authorized publication of copyrighted content are important aspects of Schneps Media's business.

15. By a written Copyright Assignment dated November 22, 2023, Schneps Media irrevocably transferred and assigned to Plaintiff all of its right, title, and interest in Plaintiff's works created before or during the term of that agreement, together with all causes of action accruing or accrued, including the right to register

SLG SANDERS · LAW GROUP ·

those works in Plaintiff's own name. The assignment applies to new works without further writing until terminated in writing. The Videos were created during the term of that agreement.

16. Plaintiff is therefore the owner of the copyrights in the Videos.

17. On March 23, 2026, the first day ICE agents were deployed to the nation's airports, Plaintiff recorded the Videos inside JFK while covering that deployment.

18. The First Video depicts ICE agents moving away from members of the press through a JFK terminal concourse.

19. The Second Video depicts two ICE agents standing in a JFK terminal in front of a Pret A Manger storefront.

20. The Videos are separate recordings of different scenes, created at different moments and from different positions. Each Video stands on its own as an independent work and has independent economic value, and each can be, and is, separately licensed.

21. In creating each Video, Plaintiff personally selected the vantage point, framing, and timing of the recording; decided when to begin and end recording and how to follow and frame his subjects; and made each of the other creative determinations necessary to create the work.

22. On March 23, 2026, Plaintiff first published the Videos on X at URL: https://x.com/Dean_Moses/status/2036087846671389023, with the caption "ICE agents run from the press inside JFK airport as they are deployed with no masks." Still images from the Videos are attached hereto as Exhibit 1.

23. From the day of first publication, the Videos were offered for license to media organizations for purposes of further distribution and public display.

24. On March 27, 2026, the First Video was registered by the United States Copyright Office (the "USCO") under Registration No. PA 2-595-029.



SLG SANDERS · LAW GROUP ·

25. On April 15, 2026, the Second Video was registered by the USCO under Registration No. PA 2-597-948.

26. Each Video was registered within three months of its first publication. Each registration identifies Schneps Media as the author of a work made for hire and Plaintiff as the copyright claimant by written transfer.

27. Plaintiff has never licensed either Video to Defendant.

28. Plaintiff created and published the Videos with the intention of licensing them commercially and for the purpose of display and public distribution.

**B. Defendant's Business**

29. Defendant operates TYT, which describes itself as one of the largest independent digital news and politics networks in the United States. Defendant produces and distributes news, commentary, podcasts, livestreams, and video programming across numerous digital platforms, including its own website, YouTube, livestream and podcast platforms, and social media channels. Its programs and channels include "The Young Turks," "TYT Sports," "The Breakdown," and "The Damage Report."

30. Defendant is a sophisticated commercial media company founded in 2002 by Cenk Uygur, and has operated continuously as a professional digital media company since then. Upon information and belief, Defendant has raised tens of millions of dollars in venture funding, employs dozens of personnel, and operates as a professional news and media enterprise engaged in the creation, acquisition, publication, distribution, monetization, and licensing of audiovisual and other copyrighted content.

31. Upon information and belief, Defendant derives revenue from multiple sources, including advertising sales, sponsorships, podcast advertising, video advertising, subscriptions, memberships, premium content offerings, and related media ventures. Defendant actively monetizes content distributed through digital

SLG SANDERS LAW GROUP

platforms and advertising partnerships, including the YouTube channel on which it published the Videos.

32. Defendant's business model depends upon the regular creation, publication, licensing, distribution, and monetization of copyrighted works. Accordingly, Defendant is highly familiar with copyright law, intellectual property rights, content ownership, licensing requirements, and the need to obtain authorization before publishing copyrighted material created by third parties.

33. Upon information and belief, Defendant's programming generates hundreds of millions of video views per month across its platforms, and its audience numbers in the millions across its YouTube channels and social media accounts. Defendant's TYT Sports YouTube channel alone has more than 1.5 million subscribers.

34. Upon information and belief, Defendant creates, owns, and exploits its own copyrighted programming, and owns federal trademark filings for marks including THE YOUNG TURKS, TYT, and THE DAMAGE REPORT.

35. Defendant is also familiar with copyright claims arising from its use of others' work. In 2022, a professional photographer sued Defendant for copyright infringement arising from the use of her photographs in videos posted to Defendant's YouTube channel. *Dermansky v. The Young Turks, Inc.*, C.A. No. 22-345-GBW (D. Del.), transferred to this District in July 2023.

36. Defendant has also been sued for copyright infringement in this District at least eight times since 2021 by photographers and videographers whose work it used without a license, including in *Bachom v. The Young Turks, Inc.*, No. 2:21-cv-05015 (C.D. Cal.); *Roberts v. The Young Turks, Inc.*, No. 2:22-cv-01190 (C.D. Cal.); *Coe v. The Young Turks, Inc.*, No. 2:23-cv-04705 (C.D. Cal.); *Jayjack v. The Young Turks, Inc.*, No. 2:24-cv-01439 (C.D. Cal.); *Ong v. The Young Turks, Inc.*, No. 2:24-cv-01583 (C.D. Cal.); *Lynk Media LLC v. The Young Turks, Inc.*, No. 2:24-cv-02279

SLG SANDERS LAW GROUP

(C.D. Cal.); *Global Weather Productions LLC v. The Young Turks, Inc.*, No. 2:25-cv-02668 (C.D. Cal.); and *Global Weather Productions LLC v. The Young Turks, Inc.*, No. 2:26-cv-02416 (C.D. Cal.), filed March 6, 2026. Defendant copied the Videos eighteen days after the most recent of those actions was filed.

**C. Defendant's Infringing Activity**

37. On or about March 24, 2026, one day after Plaintiff first published the Videos, Defendant, without permission or authorization from Plaintiff, willfully and volitionally reproduced both Videos, superimposed its own "TYT" logo and the caption "@DEAN_MOSES/TWITTER" on them, and published them, under the title "ICE Agents TERRORIZE Travelers as Airport Crackdown Kicks Off with FURY," on Defendant's "TYT Sports" YouTube channel at URL: https://www.youtube.com/watch?v=CWRodKTvdT4 (the "*Infringement*").

38. Copies of screengrabs depicting the Infringement are attached hereto as Exhibit 2.

39. The Infringement reproduces and displays each Video in its entirety, reformatted to fill Defendant's horizontal video frame and overlaid with Defendant's "TYT" logo.

40. Upon information and belief, Defendant's video plays the Videos while Defendant's host comments on the events they depict. That commentary reports on and reacts to the same events the Videos depict. It does not comment on the Videos themselves, and it did not require Defendant to reproduce the Videos in their entirety.

41. The Infringement is not a link to or an embed of Plaintiff's post. Upon information and belief, Defendant downloaded copies of the Videos, edited them into its own video, and uploaded that video to its YouTube channel, where it was stored and displayed as Defendant's own content.

42. Defendant's caption "@DEAN_MOSES/TWITTER" shows that Defendant knew the Videos were not its own and knew their source. Defendant



SLG SANDERS · LAW GROUP ·

nevertheless did not seek or obtain a license. Crediting the source of a work is not a license to use it.

43. Defendant used the Videos for the same purpose for which they were created and for which Plaintiff licenses his work: to show viewers the events the Videos depict. Defendant's use served as a substitute for a licensed use of the Videos, and did so at the moment the Videos' news value, and their licensing value, were greatest.

44. The Infringement is a copy of Plaintiff's Videos, including their protectable elements such as vantage point, framing, timing, camera movement, and overall expressive content.

45. Plaintiff first observed the Infringement on April 8, 2026.

46. The Infringement included a URL that was accessible to the public and remained available for viewing for a non-transitory period of time.

47. Upon information and belief, Defendant's TYT Sports YouTube channel is owned and operated by Defendant, and Defendant, through its employees, producers, editors, and social media personnel acting within the scope of their employment or agency (the "*Representatives*"), selects, edits, brands, uploads, publishes, monitors, and removes the content that appears on it.

48. Upon information and belief, the Videos were intentionally selected, edited, branded, and published by Defendant and its Representatives. The Infringement was not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c), and Defendant is not entitled to the limitations on liability set forth in 17 U.S.C. §512.

49. Upon information and belief, Defendant had at all times the right and ability to supervise and control the content on its YouTube channel, including the ability to remove the Infringement.

50. Upon information and belief, Defendant received a financial benefit

directly attributable to the Infringement, including advertising revenue, audience engagement, and growth of its channel. By April 9, 2026, the Infringement had drawn more than 2,000 likes.

51. Defendant's use of the Videos harmed the actual market for the Videos, and Defendant's use, if widespread, would harm Plaintiff's potential market for the Videos and for licensed news footage generally.

52. On or about August 14, 2026, Plaintiff, through counsel, notified Defendant, through its counsel, of the Infringement and requested any license information supporting Defendant's use of the Videos. The Infringement remained publicly available on that date.

53. Defendant has not identified any license for either Video and has not compensated Plaintiff for its use.

54. Upon information and belief, the Infringement has since been removed. Its removal does not cure the infringement that occurred while it was displayed.

55. Defendant's infringement was willful. Defendant, a sophisticated media company, copied the Videos with knowledge of their source and did so without seeking a license. Defendant did so after having been sued for copyright infringement in this District at least eight times, the most recent less than three weeks earlier.

56. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

57. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**<u>FIRST CAUSE OF ACTION</u>**

(Direct Copyright Infringement, 17 U.S.C. §501 *et seq.*)

58. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.



SLG SANDERS · LAW GROUP ·

59. Each Video is an original, creative work in which Plaintiff owns a valid copyright by written assignment from its author.

60. Each Video is separately registered with the USCO, and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO. Because each Video was registered within three months of its first publication, Plaintiff is entitled to elect statutory damages for each Video and to recover his attorney's fees under 17 U.S.C. §§ 412, 504(c), and 505.

61. Plaintiff has not granted Defendant a license or the right to use either Video in any manner, nor has Plaintiff assigned any of his exclusive rights in the copyrights to Defendant.

62. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant reproduced, distributed, adapted, and publicly displayed the Videos, thereby violating Plaintiff's exclusive rights in his copyrights.

63. Defendant's reproduction, distribution, and public display of the Videos constitute willful copyright infringement of each Video.

64. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

65. As a result of Defendant's violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendant.

66. As a result of Defendant's violations of Title 17 of the U.S. Code,

Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 502.

## JURY DEMAND

67. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court enter a judgment finding that Defendant has infringed Plaintiff's rights in the Videos in violation of 17 U.S.C. §501 et seq. and award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to each of the Videos by reproducing, distributing, adapting, and publicly displaying them without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award of statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 6, 2026


**SANDERS LAW GROUP**

By: _/s/ Craig B. Sanders_
Craig B. Sanders, Esq. (Cal Bar 284397)
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: csanders@sanderslaw.group
Office: (516) 203-7600
Fax: (516) 282-7878

*Attorneys for Plaintiff*
Our File No.: 145210